**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. _____**

| | |
|---|---|
| **THE CHARTER OAK FIRE INSURANCE COMPANY, THE PHOENIX INSURANCE COMPANY, AND TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA**<br>　　　　　　　　　　　**Plaintiffs,**<br><br>v.<br><br>**GRAHAM COUNTY LAND COMPANY, LLC,**<br>　　　　　　　　　　　**Defendant.** | **COMPLAINT** |

NOW COME Plaintiffs The Charter Oak Fire Insurance Company ("Charter Oak"), The Phoenix Insurance Company ("Phoenix"), and Travelers Property Casualty Company of America ("Travelers Property"), by and through the undersigned counsel, complaining of Defendant Graham County Land Company, and allege as follows:

## PARTIES

1. Charter Oak is a corporation incorporated under the laws of State of Connecticut. It is licensed by the State of North Carolina as an insurance company authorized to issue insurance policies.

2. Phoenix is a corporation incorporated under the laws of State of Connecticut. It is licensed by the State of North Carolina as an insurance company authorized to issue insurance policies.

3. Travelers Property is a corporation incorporated under the laws of State of Connecticut. It is licensed by the State of North Carolina as an insurance company authorized to issue insurance policies.

4.     Defendant is a limited liability company organized under the laws of the State of North Carolina.  It has a place of business in Graham County, North Carolina at 750 Tallulah Road, Robbinsville, NC 28771-9461.  It has a registered office in Graham County, North Carolina at 34 Shane Laughter Road, Robbinsville, NC 28771.

5.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because complete diversity exists between Plaintiffs, Connecticut citizens for purposes of 28 U.S.C. § 1332, and Defendant, a North Carolina citizen for purposes of 28 U.S.C. § 1332, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in North Carolina and the insurance policies at issue were delivered in North Carolina.

## FACTUAL ALLEGATIONS

### The WC Policy

7.     Charter Oak issued Defendant a workers' compensation insurance policy, policy number 7J03786A-UB (the "WC Policy"), for the period August 1, 2018 to August 1, 2019.  The WC Policy is attached hereto as Exhibit A and is incorporated herein by reference.

8.     Defendant renewed its workers' compensation insurance policy with Charter Oak for the period of August 1, 2019 to August 1, 2020.

9.     Per the terms and conditions contained in the insurance contract, the WC Policy provided workers' compensation insurance as required by the workers' compensation law of North Carolina.

10.    The WC Policy provides that all premium for such policy would be determined by Charter Oak's manual of rules, rates, rating plans and classifications.  *See* Ex. A, at Part Five(A).

11. The WC Policy provides Defendant will pay all premium when due. *See* Ex. A, at Part Five(D).

12. The WC Policy's Premium Due Date Endorsement provides that the due date for audit and retrospective premiums is the date of the billing. *See* Ex. A, at Premium Due Date Endorsement, Part Five(D).

13. The WC Policy provides that the final premium for such policy would be determined after such policy ends by using the actual premium basis and the proper classifications and rates that lawfully apply to the business and work covered by such policy. *See* Ex. A, at Part Five(E).

14. The WC Policy provides that Defendant would keep records of information needed to compute premium, and would provide Charter Oak with copies of those records when requested. *See* Ex. A, at Part Five(F).

15. The WC Policy provides that Defendant would let Charter Oak examine and audit its records that relate to such policy in order to determine final premium. *See* Ex. A, at Part Five(G).

16. In violation of the terms and conditions of the WC Policy, Defendant failed to report payroll and pay premium on a pay as you go basis.

17. As demonstrated in the April 22, 2020 Premium Adjustment Notice, Charter Oak's revised audit of the 2018–2019 WC Policy ultimately resulted in $853,286.00 additional premium due. The Premium Adjustment Notice is attached hereto as Exhibit B and is incorporated herein by reference.

18. Defendant never paid Charter Oak the $853,286.00 in additional premium due under the 2018–2019 audit.

19. On August 16, 2020, Charter Oak sent Defendant a letter requesting information to perform the 2019–2020 annual audit and make adjustments to the WC Policy. The Invitation Letter is attached hereto as Exhibit C and is incorporated herein by reference.

20. Defendant failed to provide the information and documentation Charter Oak requested and needed to conduct the 2019–2020 audit for the WC Policy.

21. On March 17, 2021, Charter Oak sent another letter demanding that Defendant pay the $853,286.00 and any other amounts that remain due and owing under the terms and requirements of the WC Policy. The Demand Letter is attached hereto as Exhibit D and is incorporated herein by reference.

22. On March 17, 2021, Charter Oak also demanded that Defendant fulfill its obligations under the WC Policy and participate in the 2019–2020 audit so Charter Oak could determine the additional amounts owed under the WC Policy. *See* Ex. D.

23. Defendant failed to provide the information and documents that Charter Oak requested and needed for the WC Policy.

24. Defendant still owes Charter Oak $853,286.00 for outstanding premium under the WC Policy.

25. Despite Charter Oak's demand that Defendant pay the aforesaid balance that remains due and owing under the terms and requirements of the WC Policy, the balance has not been paid.

26. Defendant still has not participated in the 2019–2020 audit so Charter Oak could determine the additional amounts owed under the WC Policy.

## The Commercial Policies

27. Phoenix issued Defendant a contractors liability policy bearing policy number 7J035607-CO, catastrophe umbrella policy bearing policy number 7J095862-CUP, and commercial automobile insurance policy bearing policy number 8N478839-810 (collectively "Commercial Policies") for the period August 1, 2020 to September 15, 2020. The Commercial Policies are attached hereto as Exhibits E, F, and G and are incorporated herein by reference.

28. Pursuant to the terms and conditions contained in the insurance contracts, the Commercial Policies provided contractors liability insurance, catastrophe umbrella insurance, and commercial automobile insurance.

29. At the inception of the Commercial Policies, the provisional premium due was $15,161.00 under the contractors liability policy, $12,317.00 under the catastrophe umbrella policy, and $55,303.22 under the commercial automobile policy. The initial premium deposit represented an estimated premium based upon information provided by Defendant to Phoenix and calculated in accordance with rates on file with the North Carolina Rate Bureau.

30. Defendant never made premium payments on the accounts for the Commercial Policies.

31. On July 30, 2020, Phoenix issued Notices of Non-Renewal for the Commercial Policies' expiration on September 15, 2020. The Notices of Non-Renewal are attached hereto as Exhibits H, I, and J and are incorporated herein by reference.

32. As the Commercial Policies were in effect for the entire duration of the policy period, Phoenix calculated the total earned premium for the Commercial Policies was $82,781.22, consisting of: $15,161.00 in earned premium due under the contractors liability

policy, $12,317.00 in earned premium due under the catastrophe umbrella policy, and $55,303.22 in earned premium and taxes due under the commercial automobile policy.

33. Defendant made no payments after the non-renewal of the Commercial Policies.

34. On March 17, 2021, Phoenix sent another letter demanding that Defendant pay the $82,781.22 in earned premium due under the Commercial Policies. *See* Ex. D.

35. Defendant still owes Phoenix $82,781.22 in outstanding earned premium due under the Commercial Policies.

36. Defendant has not made payments on the deductible losses accrued and owed under the Commercial Policies since July 2020.

37. Since July 2020, Phoenix has sent Defendant multiple invoices for the accruing deductible losses under the Commercial Policies.

38. On March 17, 2021, Phoenix sent Defendant a demand letter indicating that Defendant owes Phoenix $25,258.79 in deductible losses which were still outstanding and would continue to accrue. *See* Ex. D.

39. On May 28, 2021, Phoenix sent Defendant an invoice for $25,648.79 in deductible losses under the Commercial Policies. The Deductible Invoice is attached hereto as Exhibit K and is incorporated herein by reference.

40. To date, Defendant owes Phoenix $25,648.79 in deductible losses which are still outstanding and will continue to accrue.

41. Defendant still owes Phoenix $25,648.79 in outstanding deductible losses due under the Commercial Policies.

42. The deductible losses are incurred monthly so this figure will continue to accrue until the outstanding balances are paid.

43. In total, Defendant still owes Phoenix $108,430.01 in outstanding earned premium and deductible losses under the Commercial Policies.

44. Despite Phoenix's demand that Defendant pay the aforesaid balance that remains due and owing under the terms and requirements of the Commercial Policies, the balance has not been paid.

## The Marine Policy

45. Travelers Property issued Defendant an inland marine insurance bearing policy number 2R130735-630 ("Marine Policy") for the original period August 1, 2020 to August 1, 2021. The Marine Policy is attached hereto as Exhibit L and is incorporated herein by reference.

46. Pursuant to the terms and conditions contained in the insurance contract, the Marine Policy provided inland marine insurance.

47. At the inception of the Marine Policy, the provisional premium due was $231,021.00. The initial premium deposit represented an estimated premium based upon information provided by Defendant to Travelers Property and calculated in accordance with rates on file with the North Carolina Rate Bureau.

48. Defendant never made premium payments on the account.

49. On October 21, 2020, Travelers Property issued a Notice of Cancellation for non-payment of premium effective on November 15, 2020. *See* Ex. N at p. 113.

50. After the cancellation was effective, on November 18, 2020, Phoenix calculated the total earned premium for the Marine Policy was $66,996.00, which resulted in a returned premium of $164,025.00. *See* Ex. N at p. 116.

51. On March 17, 2021, Travelers Property sent a letter demanding that Defendant pay the $66,996.00 in earned premium due under the Marine Policy. *See* Ex. D.

52. Defendant still owes Travelers Property $66,996.00 in outstanding earned premium due under the Marine Policy.

53. Despite Travelers Property's demand that Defendant pay the aforesaid balance that remains due and owing under the terms and requirements of the Marine Policy, the balance has not been paid.

FIRST CLAIM FOR RELIEF: BREACH OF CONTRACT (WC POLICY)

54. The allegation contained in Paragraphs 1 through 55 are incorporated by reference as if fully restated herein.

55. The WC Policy is a valid and enforceable contract.

56. Pursuant to the WC Policy, Defendant was obligated to pay premiums owed and participate in the annual audits.

57. Charter Oak demanded that Defendant pay the outstanding balance of premiums owed under the WC Policy and participate in the 2019–2020 audit.

58. Defendant breached its obligations under the WC Policy by refusing to pay the outstanding premiums.

59. Defendant breached its obligations under the WC Policy by refusing to provide the information and documentation requested and needed to conduct the 2019–2020 audit.

60. As a direct and proximate result of Defendant's breach of the WC Policy, Charter Oak has sustained damages in an amount of $853,286.00 and any other amounts that remain due and owing under the terms and requirements of the WC Policy.

SECOND CLAIM FOR RELIEF: BREACH OF CONTRACT (COMMERCIAL POLICIES)

61. The allegation contained in Paragraphs 1 through 62 are incorporated by reference as if fully restated herein.

62. The Commercial Policies are valid and enforceable contracts.

63. Pursuant to the Commercial Policies, Defendant was obligated to pay premiums and deductible losses owed.

64. Phoenix demanded that Defendant pay the outstanding balance of premiums and deductible losses owed under the Commercial Policies.

65. Defendant breached its obligations under the Commercial Policies by refusing to pay the outstanding premiums and deductible losses.

66. The deductible losses are incurred monthly so this figure will continue to accrue until the outstanding balances are paid.

67. As a direct and proximate result of Defendant's breach of the Commercial Policies, Phoenix has sustained damages in an amount of $108,430.01 and any other amounts that remain due and owing under the terms and requirements of the Commercial Policies.

## THIRD CLAIM FOR RELIEF: BREACH OF CONTRACT (MARINE POLICY)

68. The allegation contained in Paragraphs 1 through 69 are incorporated by reference as if fully restated herein.

69. The Marine Policy is a valid and enforceable contract.

70. Pursuant to the Marine Policy, Defendant was obligated to pay premiums owed.

71. Travelers Property demanded that Defendant pay the outstanding balance of premiums owed under the Marine Policy.

72. Defendant breached its obligations under the Marine Policy by refusing to pay the outstanding premiums.

73. As a direct and proximate result of Defendant's breach of the Commercial Policies, Travelers Property has sustained damages in an amount of $66,996.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment in favor of Plaintiffs in an amount in excess of $75,000.00 for its actual damages plus interest at the legal rate of 8% per annum from November 15, 2020, until paid; that Plaintiffs recover costs and expenses incurred in this action; and that Plaintiffs have and receive any other relief the Court deems just and proper.

This the 7th day of June, 2021.

**/s/ SHELLEY W. COLEMAN**
**NC State Bar No. 22783**
**DIANE PAPPAYLIOU**
**NC State Bar No. 50921**
**Attorneys for Plaintiffs**
**BUTLER SNOW, LLP**
**6752 Rock Spring Road, Suite 310**
**Wilmington, NC 28405**
**PH: (910) 550-1320**
**FAX: (910) 550-1321**
**Email: Shelley.Coleman@butlersnow.com**
**Diane.Pappayliou@butlersnow.com**